[No. S014994. June 27, 1991.]

WELLS FARGO BANK, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
BARBARA WERTZ, Real Party in Interest.

[No. S014994. June 27, 1991.]

WELLS FARGO BANK, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
WILMA BOTELHO et al., Real Parties in Interest.

## COUNSEL

Brobeck, Phleger & Harrison, Jean C. Gaskill, Thomas M. Peterson, Rebecca D. Eisen and James H. Quirk for Petitioner.

Paul, Hastings, Janofsky & Walker, Paul W. Cane, Jr., and Laura L. Saadah as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

John M. True and Christopher Ho as Amici Curiae on behalf of Respondent and Real Parties in Interest.

McGuinn, Hillsman & Palefsky, John A. McGuinn, Cliff Palefsky, Cynthia Bernet-McGuinn and William L. Veen for Real Parties in Interest.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Marian M. Johnston and John Davidson, Deputy Attorneys General, Bianco, Brandi & Jones, Stephen M. Murphy, Garrison, Silbert & Arterton and Joseph Garrison as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**LUCAS, C. J.**—Three former branch office managers of a national bank brought suit seeking damages under California law for the bank's alleged wrongful termination of their employment. The bank contends their state law causes of action are preempted by the National Bank Act of 1864, which provides that a national bank's "officers" serve at the pleasure of its board of directors. (12 U.S.C. § 24, Fifth & Sixth; the National Bank Act

will also be referred to as the Act, and section 24 will be referred to as section 24 or the statute.) We consider two issues: (1) were plaintiffs "officers" within the meaning of the Act; and (2) were plaintiffs properly discharged by the bank's board of directors?

As branch managers who held appointments as assistant vice-presidents of the bank and exercised significant authority in transactions between the bank and third parties, plaintiffs were "officers" of a national bank. However, they were discharged by more senior bank officers, not by the bank's board of directors as expressly required by section 24. Therefore, plaintiffs' causes of action are not preempted by the Act. Because the Court of Appeal so held, we will affirm its decision.

## FACTS

Wells Fargo Bank, National Association (hereafter referred to as Wells Fargo or the bank) is a national banking association created pursuant to the Act. (12 U.S.C. § 21 et seq.) Wells Fargo operates a statewide network of branch banks, each of which has a branch manager.

Plaintiff Barbara Wertz was an assistant vice-president of the bank and manager of its Crystal Springs branch when the bank terminated her employment in August 1985. She had been employed by the bank since June 1974 and had been a branch manager for approximately 10 months. Wells Fargo contends Wertz was discharged because she improperly allowed a customer to negotiate a $300,000 check drawn on the account of another Wells Fargo customer, causing a significant loss to the bank.

At least 12 other Wells Fargo branch managers were discharged or allegedly induced to quit by the bank during 1984 and 1985. Among them were plaintiffs Wilma Botelho and Thomas Moore. Botelho began working for Wells Fargo in 1959 as a bookkeeper. She became an assistant vice-president in June 1980 and manager of the Grand Avenue branch in Oakland in November 1982. Wells Fargo terminated her employment in March 1985. The bank alleges she had been repeatedly and unsuccessfully warned to improve her relationship with her branch's staff.

Thomas Moore began working for Wells Fargo in 1959 as a teller and became assistant vice-president in 1976. He became manager of the bank's St. Helena branch in 1983. He was discharged in May 1985. The bank alleges that he had been repeatedly warned that "deposit volumes" at his branch were declining, but that he was unable to reverse that trend.

Neither Wertz, Botelho, nor Moore was discharged directly by Wells Fargo's board of directors. Rather, their employment was terminated by

senior vice-presidents under authority delegated to them by an executive vice-president, whose authority, in turn, was delegated by the bank's chief executive officer. His authority was pursuant to delegation by the board of directors in the bank's bylaws.

Wertz filed suit on her own behalf, alleging: (1) breach of an implied agreement that she could be terminated only for cause; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional infliction of emotional distress; and (4) wrongful termination because of her age (she was 51 years old when discharged).

Botelho and Moore joined in a separate action with 10 other former Wells Fargo branch managers, alleging the same causes of action as in the Wertz suit, including age discrimination (Botelho and Moore were each 49 years old when discharged). As a result of settlements or dismissals, only Botelho and Moore remain as plaintiffs in that joint action.

Wells Fargo moved for summary judgment in both actions on the ground that all causes of action were preempted by the Act. Wells Fargo also moved in the alternative for summary adjudication of certain issues. The superior court denied summary judgment but decided that Wells Fargo was entitled to prevail on the claims for infliction of emotional distress. The court also concluded as a matter of law that Wertz had no claim for age discrimination. The court, however, denied summary adjudication on the age discrimination claims of Botelho and Moore. As a result of these rulings, Wertz, Botelho and Moore were left with claims for breach of contract and breach of the implied covenant. Botelho and Moore were also left with claims for age discrimination.

Wells Fargo filed petitions for writs of mandate in both cases. After a consolidated hearing, the Court of Appeal issued a written opinion denying the bank's request for peremptory writs. We granted the bank's petition for review.

## Discussion

### I. *The National Bank Act*

■ The National Bank Act grants specified corporate powers to each national bank, including the power "To elect or appoint directors, and *by its board of directors to appoint a president, vice president, cashier, and other officers,* define their duties, require bonds of them and fix the penalty thereof, *dismiss such officers or any of them at pleasure,* and appoint others to fill their places." (12 U.S.C. § 24, Fifth, italics added.) It has been established

for almost a century that section 24 preempts all state law causes of action by a bank officer for breach of an employment agreement. (*Mackey* v. *Pioneer Nat. Bank* (9th Cir. 1989) 867 F.2d 520, 524-526 (hereafter *Mackey*); *Westervelt* v. *Mohrenstecher* (8th Cir. 1896) 76 Fed. 118.) We are aware of no decision to the contrary, and plaintiffs do not dispute the general rule of preemption.

 Seeking to avoid application of the general rule of preemption to their claims, plaintiffs contend as follows: (1) section 24 applies only to a bank's "senior officers" and not to branch managers, whose authority is so limited by bank policy that they do not qualify as "other officers" within the meaning of the statute; and, alternatively, (2) because they were neither appointed nor discharged in compliance with the Act, i.e., by the bank's board of directors, they are not "officers" subject to the at-pleasure provision. (12 U.S.C. § 24, Sixth.)

Wells Fargo counters that plaintiffs are "other officers" within the meaning of section 24, having been so designated by the bank, and that plaintiffs' terminations were in accord with the bank's bylaws, adopted pursuant to the statute, and were thus proper under the Act. The premise of the argument is that the bank's board of directors was allowed under the Act to delegate hiring and firing decisions to certain corporate officers and that the bank properly did so.

We examine the contentions of the parties in light of the language, history, and purpose of the relevant provisions of the Act.

## II. *"Other Officers" Under the Act*

 Section 24 grants Wells Fargo the power to appoint and dismiss at pleasure a "president, vice president, cashier, and *other officers*." (12 U.S.C. § 24, Fifth, italics added.) None of the plaintiffs held the positions of president, vice-president, or cashier. Each plaintiff was an assistant vice-president and branch manager. The question is whether he or she was one of the "other officers" referred to in section 24.

### A. *Statutory language, history and purpose*

Wells Fargo seeks an expansive construction of the "other officer" language in section 24; plaintiffs advocate a narrow one. Congress referred to "other officers" without restriction, qualification, or definition. No case cited to us supplies a precise definition of the term. It is our task to assign a meaning to the term that comports with the language, history, and purpose of the statute.

Congress passed the National Bank Act in 1864. The Act was commonly known as the National Currency Act when first enacted. Its name was changed to "The National Bank Act" in 1874. (12 U.S.C. § 38.) Although legislative history for the Act is sparse, commentators have identified three primary objectives of Congress: (1) to develop a national currency; (2) to provide a financial market for Civil War bonds issued by the Union; and (3) to develop national banks as depositories of government funds. (Symons, *The "Business of Banking" in Historical Perspective* (1983) 51 Geo.Wash.L.Rev. 676, 699; Miller, *The Future of the Dual Banking System* (1987) 53 Brooklyn L.Rev. 1, 13.) These goals were accomplished long ago: we have an exclusively national currency; the Civil War ended more than a century ago; and national banks have long served as federal depositories. As a practical matter, the question of whether a branch manager is a bank officer can therefore have no effect on these original purposes.

It is, however, not "at all probable that this provision [(section 24)] of the national bank act was inserted without purpose or consideration." (*Westervelt* v. *Mohrenstecher, supra,* 76 Fed. 118, 122.) "[T]he power to dismiss a bank officer at will reflects the Congressional mandate to establish an independent national system in order to maintain the stability of, and promote the welfare of, national banks." (*Alegria* v. *Idaho First Nat. Bank* (1986) 111 Idaho 314 [723 P.2d 858, 860].) As the court commented in *Westervelt,* one of the earliest cases to consider the at-pleasure dismissal provision in the Act: "Observation and experience alike teach that it is essential to the safety and prosperity of banking institutions that *the active officers, to whose integrity and discretion the moneys and property of the bank and its customers are intrusted, should be subject to immediate removal whenever the suspicion of faithlessness or negligence attaches to them.*" (76 Fed. at p. 122, italics added.) More recent authority confirms this statement of purpose and the broad dismissal powers that accompany it: "The purpose of the provision in the National Bank Act was to give those institutions the greatest latitude possible to hire and fire *their chief operating officers,* in order to maintain the public trust." (*Mackey, supra,* 867 F.2d at p. 526, italics added.)

Nineteenth-century case law likewise supports a broad construction of the term "officer." As the Supreme Court said in an early case: "The officers of the bank are held out to the public as having the authority to act, according to the general usage, practice and course of business; and their acts, within the scope of such usage, practice and course of business, would, in general, bind the bank, in favor of third persons possessing no other knowledge." (*Minor* v. *Mechanics' Bank* (1828) 26 U.S. (1 Pet.) 46, 70 [7 L.Ed. 47, 57]; see also *Farmers and Mechanics' Bank of Kent Co.* v. *Butchers and Drovers' Bank* (1857) 16 N.Y. 125, 130-131; *Merchants' Bank*

v. *State Bank* (1870) 77 U.S. (10 Wall.) 604, 650 [19 L.Ed. 1008, 1020]; Morse, A Treatise on the Law Related to Banks and Banking (1870) pp. 142-143.)

The broad concept of "officer" reflected in these cases is also illustrated in the common usage of the term in the banking industry. Munn's Encyclopedia of Banking and Finance (7th ed. 1973), a standard banking text in publication from 1924 to 1973, contains the following description of "other officers": "The larger the bank, the more likely there will be such additional officers as comptroller, auditor, trust officer, and functional vice presidents in charge of particular divisions, with assistant officers in these categories." (*Id.*, at p. 107.) Under the topic of "Bank Organization," an earlier edition of the text (3d ed. 1941) lists the usual bank officers as a president, one or more vice-presidents, a cashier and, "in large banks, a number of assistant cashiers, and perhaps a comptroller." (*Id.*, at p. 67.)

A more recent text describes a general banking practice favoring large numbers of officers with the title of "vice-president" who perform important banking functions under authority ultimately conferred by the bank's board of directors: "Depository institutions, and especially commercial banks, are notorious for their proliferation of vice-presidents . . . . Given the diversity of duties and functions that may be assigned to a vice-president, there is no uniformity with respect to the scope of the officer's inherent authority, as is virtually the case with the president. Generally, a vice-president has whatever express authority may be conferred by the board." (Malloy, The Corporate Law of Banks (1988) § 3.2.5, p. 229; see also 10 Am.Jur.2d, Banks, § 133, p. 131 ["A vice president is one of the executive officers of a bank, and it is patent that the directors of a bank may expressly confer upon such officer legitimate powers within the scope of the banking business. Beyond this, the powers of a vice president are not subject to an inclusive rule precisely defining what such officer may or may not do in the absence of express authority."].)

Wells Fargo's chairman and chief executive officer testified to his understanding of "officer" as used in the banking industry. He stated that the term "officer" was a broad one, signifying no more than that the officeholder possessed some degree of authority to sign bank documents such as cashier's checks, money orders, etc. As he described it: "[W]hen you became eligible to sign bank documents . . . that is when you were designated an officer of the bank." His views in this regard are confirmed by the California Bankers' Association, appearing as amicus curiae. As the association observes: "Bank officers are those in positions of special trust. While officers have varying levels of authority and responsibility depending on their particular positions, *one thing they all have in common is the ability*

*to sign documents which legally bind the bank.*" (Italics added.) (See *United States* v. *Occi Co.* (E.D.Wis. 1984) 580 F.Supp. 645, 646 [implying an "officer" is a bank official empowered to execute a mortgage assignment on behalf of the bank].)

Like other corporate officers, bank officers are the vehicles through which the bank engages in transactions and performs legal acts; in this sense, the officers *are* the bank. (See 18B Am.Jur.2d (rev.) Corporations, § 1342, pp. 253-254 & fn. 22 ["It is the nature of a person's position in relation to the corporation that determines whether he was an officer or an employee . . . . The officers function as the corporation, while a mere agent in most instances is only an employee."].)

In view of the language and purpose of section 24 and the history and practice of the banking industry, a bank "officer" within the meaning of section 24 possesses the following attributes: *First*, he or she holds an office created by the board of directors and listed in the bank's bylaws. (§ 24, Fifth and Sixth.) *Second*, he or she is appointed by the board of directors, either directly or pursuant to a delegation of board authority set forth in the bylaws. (§ 24, Fifth; *Wiskotoni* v. *Michigan Nat. Bank-West* (6th Cir. 1983) 716 F.2d 378, 387 [branch manager not appointed and dismissed by board of directors was not "other officer"].) *Third*, he or she has the express legal authority to bind the bank in its transactions with borrowers, depositors, customers, or other third parties by executing contracts or other legal instruments on the bank's behalf. (*Minor* v. *Mechanics' Bank, supra*, 26 U.S. (1 Pet.) at p. 70 [7 L.Ed. at p. 57].) *Fourth*, his or her decisionmaking authority, however it might be limited by bank rule or policy, relates to fundamental banking operations in such a manner as to affect potentially the public's trust in the banking institution. (*Westervelt* v. *Mohrenstecher, supra*, 76 Fed. at p. 122; *Mackey, supra*, 867 F.2d at p. 526.) If a particular bank employee holds a position possessing these features, he or she may be viewed as the bank itself in the eyes of third parties. Such an employee is an "officer" and serves at the pleasure of the board of directors.

As persons holding the office of vice-president and serving as branch managers, plaintiffs were "other officers" within the meaning of section 24. Their officer positions were created by the board and referred to in the bank's bylaws; there is no dispute they had the authority to deal with third parties and bind the bank in third party transactions by executing contracts and instruments. For example, the record reveals plaintiffs could commit the bank to unsecured loans in the form of overdrafts in specified amounts ranging from $10,000 to $250,000. In addition, one of the plaintiffs was dismissed because of alleged misfeasance in authorizing the negotiation and creation of instruments resulting in a $300,000 loss to the bank.

Finally, a branch manager who oversees and supervises the branch bank operations engages in and supervises transactions involving large sums of money which could affect the integrity of the bank and the public trust reposed in it. Such a person is "the bank" in a significant way in the eyes of customers and third parties. (See *Rutherford* v. *Rideout Bank* (1938) 11 Cal.2d 479, 484-485 [80 P.2d 978, 117 A.L.R. 383] [bank held liable for fraudulent acts of its manager because his position conferred "potential power" to handle mortgage transaction on behalf of bank]; *Graddon* v. *Knight* (1956) 138 Cal.App.2d 577, 583 [292 P.2d 632] [vice-president and branch manager had ostensible authority to procure insurance in connection with building loan].)

Our reasoning in this regard is supported by the decision of the Idaho Supreme Court in *Alegria* v. *Idaho First Nat. Bank, supra*, 723 P.2d 858. The court affirmed a summary judgment in favor of a national bank and against its former assistant branch manager in his action for wrongful discharge, rejecting the assistant branch manager's argument that he was not an "other officer." It observed the purpose of the Act is "to maintain the stability of, and promote the welfare of, national banks." Noting the significant banking transactions within the assistant branch manager's control (including authority to make unsecured loans up to $25,000, to document loans, and to supervise the day-to-day operations of the branch), the court held he was an "officer" who served at the pleasure of the bank's directors. (*Id.*, at p. 860.) So it is with plaintiffs in this case.

### B. *The concurring opinion*

Rejecting the reasoning of *Alegria* v. *Idaho First Nat. Bank, supra*, 723 P.2d 858, and the broad concept of "officer" emerging from banking history and practice, the concurring opinion would restrict the definition of "other officers" to those "executives who occupy the highest positions in the bank, have bankwide authority and responsibility, and are the institution's chief operational officers." (Conc. opn. of Kennard, J., *post*, at p. 1105.) For the reasons stated below, we reject the approach taken by the concurring opinion as fundamentally unsound.

Initially, the concurring opinion purports to interpret the language of the statute by using the rule of *ejusdem generis*, which provides that the general term "other officers" should be construed as applicable only to "persons . . . of the same general nature or class" as the enumerated terms "president," "vice president," and "cashier." (See *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160 [278 Cal.Rptr. 614, 805 P.2d 873].) Although the rule may be properly employed here, the concurring opinion does not satisfy its requirements. It merely asserts, with no support in

banking practice or history or the record before this court, that bank presidents, vice-presidents, and cashiers possess the common characteristics of high position, bankwide authority, and supreme operational powers.

The assertion is unfounded. "With respect to the powers and duties of the respective officers of a national bank no general rule can be laid down, as these powers and duties vary in different places and are not always the same in different banks in the same place." (9 C.J.S., Banks and Banking, § 676, p. 1226.)

As noted in section II.A., *ante*, banks have historically created and empowered a wide variety of "other officers" with varying functions and degrees of authority to carry out banking business. Congress has explicitly authorized a national bank's board of directors, not this court, to appoint "other officers" and to "define their duties." (§ 24, Fifth.) Nothing in the language or history of the Act suggests that such duties must be "high level" or "bankwide." Indeed, we doubt the concurring opinion's definition of "officer" could successfully be applied even to the highest level bank employees. In the modern era of specialized management, bank presidents (i.e., chief executive officers) and senior level officers do not universally possess or exercise bankwide *and* operational authority. (Malloy, The Corporate Law of Banks, *supra*, § 3.2.5.) As shown above, the use of the term "officer" in the banking context imports no more than appointment by the board and authority to act for the bank in third party transactions. These characteristics are embodied in the four-part definition we have derived from the case law and relevant banking practice.

The concurring opinion also argues the National Bank Act does not preempt state wrongful discharge law. To the contrary, as noted above, every case decided in this area has acknowledged the preemptive effect of section 24 on state law employment causes of action brought by dismissed bank officers. As the Court of Appeals for the Ninth Circuit explained in *Mackey, supra,* in holding that state law tort and contract claims were preempted by section 24: "Moreover, it would make little sense to allow state tort claims to proceed . . . . The effect would be to substitute tort for contract claims, thus subjecting the national bank to all the dangers attendant to dismissing an officer. . . . 'The intent of the statute was to place the fullest responsibility upon the directors by giving them the right to discharge such officers at pleasure . . . . It is idle to say that the statute merely gives the power to discharge the official, without the right to do so. The grant of power carries with it the untrammeled right to its exercise, free from penalty.'" (*Mackey, supra,* 867 F.2d at p. 526.)

Neither the law of preemption nor the other factors relied on in the concurring opinion alters our duty to construe the National Bank Act in

accordance with its language and history and consistent with the ordinary and usual meaning assigned to its terms. As demonstrated above, such a construction yields a conclusion that "other officers" include the plaintiffs in this case. Although that construction may make unavailable to them state law causes of action that are available to management-level employees in other industries, any perceived inequity in this regard is a problem for Congress, not this court. "[T]he task before us is not to improve the statute but to construe it." (*California Medical Assn.* v. *FEC* (1981) 453 U.S. 182, 192, fn. 13 [69 L.Ed.2d 567, 578, 101 S.Ct. 2712].)

### C. *Conclusion*

For the foregoing reasons, we conclude that the term "other officers" in section 24 is not restricted to any particular type of officer. Provided he or she meets the four criteria described in section II.A., *ante*, a national bank's assistant vice-president and branch manager is an "other officer" within the meaning of section 24. Such an "officer" is employed at the pleasure of the bank's board of directors and, if properly dismissed by the board, has no state law cause of action for breach of an employment contract, whether express or implied, or for breach of any implied covenant of good faith and fair dealing.

This case does not require us to determine the outer reaches of the term "other officers." We are satisfied that bank employees whose positions possess the four characteristics we have outlined are within the class of persons whom Congress desired to serve at the pleasure of the bank's board of directors. Obviously, bank employees such as janitors, tellers, or others who do not hold offices or enjoy the requisite authority to deal with third parties on the bank's behalf do not fall within the scope of section 24.

### III. *Delegation Powers of the Bank's Board of Directors*

 Section 24 grants Wells Fargo the power "[t]o elect or appoint directors, and *by its board of directors*, to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, *dismiss such officers or any of them at pleasure*, and appoint others to fill their places." (12 U.S.C. § 24, Fifth, italics added.) It is undisputed that Wells Fargo's board of directors did not make or approve the decisions to discharge any of the plaintiffs in this case. Wells Fargo contends it is nevertheless entitled to rely on section 24's at-pleasure provision because plaintiffs' terminations were made or approved by other officers (senior to plaintiffs) to whom the board had properly delegated authority to make such terminations. Plaintiffs contend section 24 does not permit such delegation or, alternatively, that the chain of delegation was

itself defective under Wells Fargo's internal rules and procedures. As we shall explain, section 24 does not allow delegation of the dismissal power. We therefore do not decide whether the purported delegations in this case (and the terminations pursuant thereto) were proper under Wells Fargo's own rules.

### A. *Statutory language*

■ We begin with the fundamental rule that our primary task is to determine the lawmaker's intent. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) In doing so, we turn first to the words themselves. (*Ibid.*) Section 24, Fifth (hereafter Paragraph Fifth), refers to a national bank's "other officers" who are appointed and discharged *"by its board of directors."* (Italics added.) The statute does not purport to authorize a board's delegation of its authority to discharge officers at pleasure. Wells Fargo does not contend otherwise.

■ As a matter of general corporate law, a board of directors has no power to delegate the performance of its basic powers and functions, particularly its statutory prerogatives, in the absence of express statutory authority. (2 Fletcher, Cyclopedia of the Law of Private Corporations (1990) § 497, p. 591 ["The board of directors cannot delegate to subordinate officers or agents the exercise of discretionary powers which by the charter, general laws, bylaws, vote of the stockholders or usage is vested exclusively in the board."].) California follows the general rule. (*Compton College Federation of Teachers* v. *Compton Community College Dist.* (1982) 132 Cal.App.3d 704, 714-715 [183 Cal.Rptr. 341] ["[A] board of directors of a private corporation cannot delegate away its responsibility to govern the corporation, unless permitted to do so by statute. . . . The Legislature can grant this power to delegate, as it has done, by allowing powers to be delegated to committees of the board of directors, i.e., Corporations Code, sections 212, subdivision (b)(5), and 311."].)

The no-delegation rule is well established. For example, in a corporate law text published in 1882, the author restates the rule as follows: "Those powers of the directors of a corporation which it is intended they should exercise personally can in no case be delegated." (Morawetz, A Treatise on the Law of Private Corporations (1882) § 248, p. 242.) The rule applies with equal force to banks. The statutory duties of a bank's board of directors cannot generally be delegated to subordinate agents, officers, or employees. (Magee, A Treatise on the Law of National and State Banks (3d ed. 1921) § 87, p. 106 ["A duty imposed upon the board of directors by the statute to be personally performed cannot be delegated to a committee or agent of the

bank."]; see also *id.*, § 89, at p. 108 ["The directors cannot delegate to agents any statutory duties imposed upon them by law to perform."].)

To be sure, in the evolution of modern corporate law, boards of directors are authorized to and do in fact delegate many of their powers and functions to others, both inside and outside the corporation. But this change in the law has generally come about through enactment of specific statutory provisions that allow delegation. (See, e.g., Corp. Code, §§ 300, 309, 311 [specifically authorizing board of directors to delegate management of day-to-day operations, to rely on information supplied by others, and to form committees to carry out functions with specified exceptions which must be carried out by the full board].) No such provision appears in the National Bank Act.

In apparent recognition of the no-delegation rule, Wells Fargo contends that a provision of the National Bank Act supplies express authority allowing the board of directors to delegate its function of dismissing bank officers. It relies on section 24, Sixth (hereafter Paragraph Sixth), which grants a national bank the power, "To prescribe, by its board of directors, bylaws *not inconsistent with law*, regulating the manner in which its stock shall be transferred, its directors elected or appointed, *its officers appointed*, its property transferred, its general business conducted, and *the privileges granted to it by law exercised and enjoyed.*" (Italics added.) Wells Fargo points to the provisions in Paragraph Sixth that *bylaws* can regulate the manner in which: (1) "officers can be appointed," and (2) "the privileges granted to it by law exercised and enjoyed."

Article III, section 1 of Wells Fargo's bylaws enumerates those officers that must be elected by its board of directors and then states: "Other officers may be appointed by the Chief Executive Officer or by any officer or committee whom he may authorize to perform this duty. All officers shall hold office at will, at the pleasure of the Board of Directors, the Chief Executive Officer, the officer or committee having the authority to appoint such officers, and the officer or committee authorized by the Chief Executive Officer to remove such officers, and may be removed at any time, with or without notice and with or without cause."

The bank's reliance on its bylaws is unavailing. Paragraph Sixth allows bylaws to regulate the manner in which "officers [are] *appointed.*" (Italics added.) Conspicuously absent from Paragraph Sixth is any reference to the manner in which officers can be *dismissed.* This omission is in sharp contrast to Paragraph Fifth, which explicitly refers to both the appointment *and* dismissal of officers serving at pleasure, placing those functions in the hands of the board of directors. (7) It is hornbook law that where

Congress has carefully employed a term in one place and excluded it in another, it should not be implied where excluded. (*Russello* v. *United States* (1983) 464 U.S. 16, 23 [78 L.Ed.2d 17, 24, 104 S.Ct. 296]; *Federal Trade Comm'n* v. *Sun Oil Co.* (1963) 371 U.S. 505, 515 [9 L.Ed.2d 466, 476, 83 S.Ct. 358].)

To accept Wells Fargo's argument, we would have to insert words into Paragraph Sixth so that it would extend to bylaws regarding "officers appointed [or dismissed]." ■ Doing so would violate the cardinal rule that a statute ". . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions." (*People* v. *Campbell* (1902) 138 Cal. 11, 15 [70 P. 918].)

Thus, Paragraph Sixth's reference to bylaws regulating a bank's exercise of its *appointment* powers offers no support for Wells Fargo's argument that it can delegate its board of directors' *discharge* powers. To the contrary, the language on which Wells Fargo relies strongly suggests that Congress either did not consider, or rejected, the view that a board can delegate its power to discharge officers at pleasure.

Wells Fargo also relies on the provision in Paragraph Sixth that a national bank's bylaws, not inconsistent with law, may regulate *"the privileges granted to* it [the bank] by law exercised and enjoyed." (Italics added.) But the general language in Paragraph Sixth is qualified by the more specific, restrictive language in Paragraph Fifth, that officers be dismissed by the board of directors. Within the text of the Act, the restriction is conspicuous. Congress did not include a requirement for board action in other provisions of section 24 that enumerate the powers of national banks. For example, no references to a bank's board of directors are contained in the provisions granting the power: "To adopt and use a corporate seal." (par. First); "To have succession . . . ." (par. Second); "To make contracts." (par. Third); "To sue and be sued . . . ." (par. Fourth); "To issue and sell securities . . . ." (par. Ninth); and "To invest in tangible personal property . . . ." (par. Tenth). To construe Paragraph Sixth as allowing a board of directors to delegate those powers creates no inconsistency between Paragraph Sixth and those provisions of section 24. Paragraph Fifth, however, unlike these other provisions, refers to powers *of the board of directors*. To construe Paragraph Sixth as allowing delegation of *all* the powers enumerated in section 24 would render meaningless the language in those provisions—like Paragraph Fifth—that are explicitly conferred *on the board* rather than *on the bank* as an entity.

Wells Fargo's reliance on Paragraph Sixth is unpersuasive for another reason. Paragraph Sixth refers only to bylaws "regulating *the manner*" in

which a bank may exercise the powers enumerated in that paragraph. The power at issue in this case is the power to discharge officers serving at pleasure. Paragraph Fifth vests that power in the board of directors. Paragraph Sixth thus allows bylaws that regulate how that power is exercised *by the board*. We cannot reasonably extrapolate from Paragraph Sixth a further power to delegate the exercise of that power. A bylaw that regulates a *board's* exercise of *its* power is one thing. A bylaw that delegates the power to others is quite another thing—different in degree and in kind. We decline to read into Paragraph Sixth a sweeping power of a board of directors to delegate its power to discharge officers at pleasure absent clear and unmistakable language that Congress intended such result.

This reading of Paragraph Sixth is also supported by its caveat that bylaws not be "inconsistent with law." A bylaw purporting to vest authority to discharge officers serving at the board's pleasure in some person or body other than the bank's board of directors is inconsistent with law, i.e., with the express provisions of Paragraph Fifth.

In summary, we decline to depart from the plain meaning of Paragraph Fifth, which restricts to the board of directors the power to discharge officers at pleasure. Considered against the background of general corporate and banking law, Paragraph Fifth is unambiguous in its reservation of authority to discharge officers serving at pleasure in the board. As Justice Mosk has explained: "We have declined to follow the plain meaning of a statute only when it would inevitably have frustrated the manifest purposes of the legislation as a whole or led to absurd results." (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) No frustration of purpose or absurdity in result obtains here.

### B. *Public policy considerations*

Wells Fargo contends sound public policy, as reflected in general corporation law, weighs in favor of allowing the board of directors of a large, modern-day corporation to delegate its powers. This argument misses the mark in three important respects.

First, the question before us can be answered by adherence to the plain language of section 24. We therefore need not—indeed, should not—decide this case based on public policy, as we might do when dealing with the common law. (*Brown* v. *Kelly Broadcasting Co., supra*, 48 Cal.3d 711, 739.) Wells Fargo implies that application of section 24 according to its terms is unduly cumbersome and inefficient in modern-day banking. This, however, is an argument against the statute itself, not one that seeks to advance (or is even consistent with) its underlying policies.

■ Our function is not to judge the wisdom of statutes. (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 805 [268 Cal.Rptr. 753, 789 P.2d 934].) Nor are we empowered to insert what a legislative body has omitted from its enactments. (*Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557].) In a case arising under section 24, another state's high court properly observed, "We need not agree with the philosophy of, nor the power delegated by, the Congressional enactment, but are nevertheless bound thereby." (*Alegria* v. *Idaho First Nat. Bank, supra*, 723 P.2d 858, 860.) As Justice Traynor stated: "[W]ords . . . stand in immobilized sentry, reminders that whether their arrangement was wisdom or folly, it was wittingly undertaken and not to be disregarded." (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].)

We concur in the Court of Appeal's observation that, "If evolving federal banking policy requires an expansion of the 'at will' provision, Congress should say so. Congress, unlike the courts . . . would hold hearings and take testimony on the subject before announcing federal policy. Unless and until Congress acts to adjust the wording of the statute to meet the changed conditions in the banking industry, we look to the words of Paragraph Fifth [of section 24] for federal policy. We apply the statute strictly, according to its terms."

Second, Wells Fargo's policy argument in favor of delegation reflects a misperception of the issue before us. We do not hold or suggest that section 24 prohibits or even restricts a national bank's power to delegate as it sees fit the responsibility for personnel matters, including the power to discharge officers. The narrow question before us is whether by delegating that power the bank loses the broad protection it would have if the discharge were by the board of directors itself. On *that* question, public policy is contrary to the bank's position. A national bank is granted a broad and unique exemption from state wrongful discharge law by section 24. It is not unfair to require a bank seeking such a benefit to bear the burden of following scrupulously the letter of the statute. (*Mahoney* v. *Crocker Nat. Bank* (N.D.Cal. 1983) 571 F.Supp. 287, 291 [rejecting section 24 defense because bank failed to follow proper discharge procedures].)

Third and most important, Wells Fargo's public policy argument is largely based on the notion that, in an era of large banks with perhaps hundreds of branches and thousands of officers, to require the appointment and discharge of all officers by the bank's board of directors will be burdensome and thereby somehow conflict with the purposes of the Act. To the contrary, the record indicates that only about 13 Wells Fargo branch managers were discharged or induced to resign during the 2-year period of 1984 and

1985. Due consideration of 13 dismissals by the Wells Fargo board would not impose an unwieldy burden on corporate government.

Finally, Wells Fargo contends board action discharging officers would be a meaningless "rubber stamp" of actions recommended by its senior officers. Board action of many kinds is often a ratification of recommendations by senior management. But the board remains responsible for performing its statutory and other functions. We will not presume it will undertake those duties lightly. Moreover, as noted above, if section 24 unreasonably requires such a function to be carried out by a bank's board, the remedy lies with Congress, not with this court.

### C. *Prior decisions on delegation*

Wells Fargo contends "all applicable precedent" permits the delegation of the power of a national bank's board of directors under section 24 to discharge officers at pleasure. To the contrary, the few relevant decisions are either less compelling than Wells Fargo contends or contrary to its position.

In *Wiskotoni* v. *Michigan Nat. Bank-West, supra,* 716 F.2d 378, the court rejected a national bank's preemption defense under section 24 in a wrongful discharge action by a former branch manager. The bank relied on a provision in its bylaws that characterized branch managers as officers. The court found this not to be dispositive because of the requirement in section 24 that officers be appointed and discharged by the bank's board of directors. The plaintiff in *Wiskotoni* had been neither appointed nor discharged by his bank's board. He had been hired by the bank's president and discharged by a subsequent president. The evidence further showed this was the bank's usual practice, i.e., the president, not the board of directors, appointed and terminated branch managers. The court held the branch manager was not an officer under section 24. (716 F.2d at p. 387.)

Unlike our case, the bank in *Wiskotoni* did not argue that *its bylaws* delegated the board's at-pleasure discharge power to the banks' president. As a matter *of practice,* however, the board had apparently delegated (or attempted to delegate) this power. The court found that to be insufficient under section 24. Because a purported delegation in a bank's bylaws was not at issue, *Wiskotoni* is not entirely apposite to this case. But to the extent it dealt with discharge by a senior officer rather than a board of directors, the case undermines Wells Fargo's argument that delegation is permitted.

In *Mackey, supra,* 867 F.2d 520, the court affirmed judgment in favor of a national bank in a wrongful discharge action by a former branch manager. In doing so, the court stated that "a national bank's board of directors may

assign the performance of their duties *to an executive committee*." (*Id.*, at p. 525, italics added.) The board of directors, by means of a resolution, had delegated its discharge power to an executive committee *of the board of directors itself.* That committee *of directors* decided to terminate the plaintiff, and its decision was subsequently ratified by the full board. In contrast, here the Wells Fargo board was in no way involved in plaintiffs' terminations. The *Mackey* court was not confronted with and did not purport to uphold terminations like those in this case, which were carried out through an elaborate chain of delegations and subdelegations and which were never subjected to board approval or ratification.

In *McWhorter* v. *First Interstate Bank* (1984) 67 Ore.App. 435 [678 P.2d 766] (*McWhorter I*), the Oregon appellate court reversed the dismissal of a discharged vice-president and branch manager's contract claims for wrongful discharge. The court made clear that section 24 does not apply unless a discharge is by a bank's board of directors. (678 P.2d at p. 768.) The bank contended this requirement was met if the board properly delegated its authority to senior officers. The case was before the court on a motion to dismiss (the equivalent of a demurrer in California), and the court avoided the issue by relying on the plaintiff's allegation in his complaint that he had not been discharged by the bank's board. The decision, therefore, provides no guidance on the precise issue before us, but it did stress the importance of discharge by a board of directors.

After *McWhorter I*, *supra*, 678 P.2d 766, the defendant bank obtained summary judgment based on a purported delegation from the bank's board to its president. As in *McWhorter I*, the Oregon appellate court reversed the judgment. The court again avoided the question of whether the board could delegate its discharge power but concluded that, if the power could be delegated, the purported delegation before the court was insufficient. (*McWhorter* v. *First Interstate Bank* (1986) 81 Ore.App. 132 [724 P.2d 877, 879] (*McWhorter II*).) Because the court again avoided deciding the delegation issue, the decision provides no support for Wells Fargo's argument or direct guidance to us.

Wells Fargo also points to two federal trial court decisions. In *Mahoney* v. *Crocker Nat. Bank, supra,* 571 F.Supp. 287 (*Mahoney*), the court also rejected a national bank's defense under section 24. As in the present case, the defendant bank's bylaws delegated to specified personnel the board of directors' power to discharge officers. The bank failed to establish, however, that discharge powers had been delegated to the persons who actually effected the plaintiffs' terminations. Because this failure defeated the bank's argument, *Mahoney* does not support Wells Fargo's position.

In reaching its conclusion, however, the *Mahoney* court, *supra*, 571 F.Supp. 287, expressly declined to read section 24 "as meaning that the dismissal at pleasure defense can be asserted *only* when the board of directors itself makes the dismissal." (571 F.Supp. at p. 290, original italics.) We are not persuaded by this trial court dictum. The court relied on Paragraph Sixth but did not analyze that provision, and its conclusion was ipse dixit. As explained above, we find any reliance on Paragraph Sixth unpersuasive. We also note that *Mahoney* was decided before *Wiskotoni* v. *Michigan Nat. Bank-West*, *supra*, 716 F.2d 378, and *Mackey*, *supra*, 867 F.2d 520, the two federal appellate decisions addressing the issue, both of which suggest that delegation of dismissal authority to officers (rather than to a committee of the board) is not permitted.

The *Mahoney* court, *supra*, 571 F.Supp. 287, noted a conclusion by the Comptroller of the Currency that: "The board of directors of a national bank may not delegate responsibility for its duties but may assign the performance thereof." (12 C.F.R. § 7.4425 (1987).) Wells Fargo also points to this statement as support for its view. Initially, this conclusion is characterized by the comptroller himself as a mere "Interpretive Ruling." (*Batterton* v. *United States* (1977) 432 U.S. 416, 425, fn. 9 [53 L.Ed.2d 448, 456, 97 S.Ct. 2399] ("[A] court is not required to give effect to an interpretive regulation.").) Moreover, any attempt to discern Congress's intent in 1864 from an administrative interpretation issued more than a century later is inevitably an exercise in speculation. (*General Electric Co.* v. *Gilbert* (1976) 429 U.S. 125, 142 [50 L.Ed.2d 343, 358, 97 S.Ct. 401] [emphasizing importance of *contemporaneous* interpretation and declining to give weight to agency interpretation issued only eight years after the statute was enacted].) Finally, the comptroller's general statement is beside the point. As we have explained, the power of a national bank's board of directors to delegate its powers is not the issue. We are concerned only with the effect of such delegation on the discharge-at-pleasure defense under section 24. As to that question, there is no indication the comptroller has expressed any view.

Nor do we find guidance in the trial court's decision in *Holland* v. *Bank of America* (S.D.Cal. 1987) 673 F.Supp. 1511, in which the court relied on section 24 to reject a branch manager's claim of wrongful *demotion*. The court noted the bank's alternative contentions that it could unilaterally decide whom to appoint as an officer and that it could delegate the power of dismissal. With no discussion of either section 24 or prior decisions, the court stated merely that, "The bank's position is meritorious." (673 F.Supp. at p. 1516.) The Court of Appeal in the present case correctly recognized *Holland* to be "a very loose analysis of the issue." *Holland* is not only unpersuasive; it is inapposite. The plaintiff there had been demoted, not discharged. Section 24 contains no provision restricting to directors the

power to demote. Demotion is certainly a different, and arguably a less significant management decision, than discharge.

In short, we find no compelling authority in the cases on the issue of delegation. On balance, however, the cases, especially those decided by the federal appellate courts, suggest that delegation of the power to discharge officers at pleasure is either not permitted or is permitted only to a committee of the board itself. (See, e.g., *Mackey, supra,* 867 F.2d 520, 525.) No court has approved under section 24 a procedure similar to the one adopted by Wells Fargo in this case—a long and complex chain of purported delegations.

### D. *Conclusion*

Our conclusion on the issue of delegation is supported by considerations of sound judicial policy. If Wells Fargo's arguments were adopted, courts would be required to consider difficult issues of delegation in each wrongful discharge case brought by a bank officer. As this case illustrates, the consideration of these issues can be both byzantine and labyrinthine, as the judge is forced to wade through bylaws, resolutions, and internal bank documents that are regrettably less than clear or precise. Yet all of this can be avoided if the board of directors of the bank simply discharges bank officers. Because the board of directors has the ability to remove uncertainty and confusion from the discharge process by acting in the manner specified by statute, it should be required to do so.

We hold that section 24 does not preempt state law causes of action for wrongful discharge by a former national bank officer unless the officer was dismissed by the bank's board of directors itself or the discharge was approved or ratified by the board. Initial approval of a discharge may take place by action of a committee of board members who have been specifically authorized by the entire board to take such action, but, in this event, the initial approval must nonetheless be ratified by prompt and proper action of the entire board. If full-board action is not taken, the bank may not rely on the at-pleasure provisions of section 24 as a defense to a wrongful discharge action.

We emphasize the narrowness of our holding. We are dealing with a single, unique statutory scheme that specifically assigns the power to terminate bank officers to the board of directors and does not allow delegation of that power to any other person or entity. In addition, we are not called upon to address the general legal effects of the bank's decisions to dismiss its officers, but only the bank's assertion of the extraordinary dismissal privilege as accorded in the National Bank Act. As we have stated, if the bank

desires to invoke the privilege, it should, in fairness, be prepared to fufill the statutory conditions incident to its exercise, including the express condition of the board of directors' action.

We intimate no view as to the validity of delegations of corporate power in any other context. (See, e.g., Corp. Code, § 300, subd. (a) ["The board [of directors] may delegate the management of the day-to-day operation of the business of the corporation to a management company or other person provided that the business and affairs of the corporation shall be managed and all corporate powers shall be exercised under the ultimate direction of the board."].)

IV. *Age Discrimination Claims Under State Law*

Plaintiffs Botelho and Moore assert claims of unlawful age discrimination under California state law. (Plaintiff Wertz's claim of age discrimination was summarily adjudicated in Wells Fargo's favor by the trial court. Wertz did not seek appellate review of that ruling, and her discrimination claim is not before us.) Plaintiffs' primary argument in this court is that section 24 does not preempt state law causes of action for age discrimination or other violations of state statutes. In light of our holding that Wells Fargo is not entitled to a preemption defense under section 24 because the bank's board of directors failed to approve or ratify plaintiffs' discharge as officers, we need not and do not decide this important and difficult question. (See *Aalgaard* v. *Merchants Nat. Bank, Inc.* (1990) 224 Cal.App.3d 674, 686-695 [274 Cal.Rptr. 81] [state age discrimination law preempted by section 24 discharge].)

CONCLUSION

The decision of the Court of Appeal is affirmed.

Panelli, J., Arabian, J., and Puglia (Robert K.), J.,* concurred.

**MOSK, J.,** Concurring.—Although the issue is not crystal clear, and both contentions have arguable merit, I conclude the concurring opinion of Justice Kennard is preferable.

It is obvious to me that the bank did not consider these plaintiffs to be "other officers" within the meaning of the National Bank Act. The purported discharge of the plaintiffs was ordered, as the majority opinion concedes,

---

*Presiding Justice, Court of Appeal, Third Appellate District, assigned by the Chairperson of the Judicial Council.

"by more senior bank officers." There is no rational way in which the bank could justify the discharge of officers by other officers.

Since the bank itself deemed these plaintiffs to be mere employees expendable at the direction of officers, there is no justification for this court to elevate the plaintiffs to the status of "other officers."

Under these circumstances, the plaintiffs are not "other officers" and their claims are thus not preempted by the National Bank Act. Their rights should be determined under the laws of the State of California.

**KENNARD, J.,** Concurring.—I concur in the majority opinion insofar as it holds that a national bank's board of directors may not both delegate its dismissal power and invoke the protections of the extraordinary dismissal privilege of the National Bank Act. (12 U.S.C. § 21 et seq.; hereafter the Act.) This holding is compelled by the plain meaning of the language of 12 United States Code section 24, paragraph Fifth (hereafter section 24(5)) and paragraph Sixth of the Act.

I cannot agree, however, with the majority that branch managers of a national bank are "other officers" within the meaning of section 24(5), and that state law has therefore been preempted by federal law. The majority's conclusion, although on its surface appealing, is not supported by the language and purpose of section 24(5), and it violates basic principles of federal preemption law. The majority has thoroughly confused the definition of the term "officer" with inapplicable agency principles, has improperly relied on a general statement of an overall purpose of the Act that is too abstract to be related to the issue here, and—without definition or adequate support in the record—has substituted for the ambiguous term "officers" the even vaguer concept of persons involved in "fundamental banking operations."

As I shall demonstrate, "officers" under section 24(5) are those executives who occupy the highest positions in the bank, have bankwide authority and responsibility, and are the institution's chief operational officers.

## I

In section 24(5) of the Act, Congress granted each national bank the authority "by its board of directors to appoint *a president, vice president, cashier, and other officers,* define their duties, require bonds of them and fix the penalty thereof, *dismiss such officers or any of them at pleasure,* and appoint others to fill their places." (§ 24(5), italics added.) When applicable, this federal statute preempts state law. For instance, corporate bylaws or contractual provisions that purport to give a cashier a term of office are void

(*Westervelt* v. *Mohrenstecher* (8th Cir. 1896) 76 Fed. 118, 122), and the contractual and tort law claims of an executive vice-president of a national bank based on a dismissal are completely barred. (*Mackey* v. *Pioneer Nat. Bank* (9th Cir. 1989) 867 F.2d 520, 522, 525-526.)

The issue in this case is whether Congress, in enacting the Act, intended to preempt state employment law to the extent that branch managers must be considered officers for purposes of section 24(5). The statutory language, the purpose of the provision, and fundamental principles of preemption compel the conclusion that Congress did not intend this result.

Section 24(5) applies to "a president, vice president, cashier, and other officers" of a national bank. The term "officers" is ambiguous. It may refer to anyone holding an office (Webster's New Internat. Dict. (2d ed. 1941) p. 1691), or it may refer to "a person charged with important functions of management such as president, vice president, treasurer, etc." (Black's Law Dict. (6th ed. 1990) p. 1083.) The context in which the word is used in section 24(5), however, indicates that the term "other officers" denotes individuals who perform functions similar to those performed by a bank's president, vice-president, or cashier.

" '[W]here general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage.' " (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10 [158 Cal.Rptr. 370, 599 P.2d 676], quoting *Scally* v. *Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806, 819 [100 Cal.Rptr. 501]; see *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 12 [241 Cal.Rptr. 67, 743 P.2d 1323].)

Section 24(5) specifically enumerates "president, vice president, and cashier." They are a bank's "chief operating officers." (See *Mackey* v. *Pioneer Nat. Bank, supra,* 867 F.2d at p. 526.)

The president of a bank is considered either the executive head of the institution, or the executive agent of the board of directors with authority similar to the authority of a director. (2A Fletcher, Cyclopedia Corporations (rev. 1982) §§ 553, 556, pp. 14, 19.) As one court has explained: "Under the usages and customs of modern banking the president of a bank is no longer regarded as an ornamental magnet with which to attract

deposits, but, on the contrary, is now, and has been for several years, recognized as the executive head and most important agent in connection with banking operations." (*Bartlett Estate Co.* v. *Fraser* (1909) 11 Cal.App. 373, 376 [105 P. 130].) Thus, the president of a bank occupies its highest office and may be its most important operational officer. (*Ibid.*; see Morse on Banks and Banking (1870) p. 128.) Next in the bank's hierarchy is the vice-president, who acts as the president in the event of the president's absence or inability to act. (2A Fletcher, Cyclopedia Corporations, *supra*, § 627, at p. 164.)

The cashier is the bank's institutionwide managing and executive officer (see, e.g., *United States* v. *City Bank of Columbus* (1858) 62 U.S. (21 How.) 356, 364 [16 L.Ed. 130, 133]; *Cox* v. *First Nat. Bank* (1935) 10 Cal.App.2d 302, 307 [52 P.2d 524]) through whom all of the bank's financial operations are conducted. (2A Fletcher, Cyclopedia Corporations, *supra*, §§ 708, 709, at pp. 326-327; see Morse on Banks and Banking, *supra*, at pp. 137-196.) Because of these important and extensive responsibilities, the cashier is considered to possess greater power than the president of the bank. (2A Fletcher, Cyclopedia Corporations, *supra*, § 553, at p. 15.)

It is readily apparent from the above analysis that the bank officers enumerated in section 24(5) share these characteristics: they occupy the highest positions in the institution, they have bankwide authority and responsibility, and they are the institution's chief operational officers. The term "other officers" follows the enumeration in the statute of "president, vice president, and cashier." Thus, the statutory language itself requires that the general words "other officers" must " 'be construed as applicable only to persons or things of the same general nature or class as those enumerated.' " (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters, supra*, 25 Cal.3d at p. 331, fn. 10, quoting *Scally* v. *Pacific Gas & Electric Co., supra*, 23 Cal.App.3d 806, 819.) The term "other officer" must therefore possess the earlier-described characteristics of a president, vice-president, or cashier.

A branch manager, as the job title itself reveals, does not occupy one of the highest positions in the bank, does not have authority over or responsibility for the bank as a whole, and is not one of the bank's chief operating officers. Thus, the majority's conclusion that the word "officer" as used in section 24(5) is defined in terms of whether the person may potentially affect a third party's views of the bank (maj. opn., *ante*, p. 1091) is inconsistent with the import of the language of the Act itself. The majority's conclusion, ignoring basic tenets of statutory construction, renders the statutory words "a president, vice president, and cashier" mere surplusage. More-

over, the majority's conclusion also fails to further the purpose of the statute, as I shall discuss.

## II

The Act was adopted in 1864. Section 24(5) of the Act was taken verbatim by Congress from section 18 of the New York Banking Law of 1838. (*In re Paramount Publix Corporation* (2d Cir. 1937) 90 F.2d 441, 443.)

The purpose of section 24(5) and similar statutes is to assure that the fullest responsibility for control over the bank is placed in its board of directors, by vesting the board with unfettered control over the key personnel charged with implementing the policies of the board. (See Annot., Construction, Application, and Effect of Statutory Provision that Directors of Corporation May Remove Officer, Agent, or Employee at Pleasure (1937) 111 A.L.R. 894, 896; accord, *Mackey* v. *Pioneer Nat. Bank, supra,* 867 F.2d at 522 [executive vice-president]; *Westervelt* v. *Mohrenstecher, supra,* 76 Fed. at p. 122 [cashier]; *Copeland* v. *Melrose Nat. Bank* (1930) 229 A.D. 311 [241 N.Y.S. 429, 430] [vice-president].)

The majority's expansive construction of the term "officer" is inconsistent with the statutory purpose and therefore cannot justify the majority's refusal to honor the statutory language. A branch manager of a bank does not occupy the critical position of control envisioned by section 24(5) and similar statutes. By definition, a branch manager's authority and responsibility extend to a limited constituent part of a bank. A branch manager manages a *branch* of the bank, not *the bank*. Branch managers are, by definition, neither responsible for nor in charge of *the bank's* affairs. Branch managers do not create bank policy or the means by which bank policy is implemented. Branch managers implement policy only in the sense of applying it to specific transactions. Branch managers are not the critical control personnel envisioned by the statutory purpose. Thus, the majority's conclusion that branch managers are officers within the meaning of section 24(5) not only contravenes the statutory language, it is also unnecessary to effectuate the statutory purpose of vesting the board of directors with unfettered control over key personnel. Moreover, as explained below, the majority's analysis and conclusion ignore well-established principles of preemption.

## III

The effect of section 24(5) is to preempt state law. Yet the majority fails to address, consider, or apply preemption law to the preemption issue.

Preemption is not to be presumed. "Pre-emption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.'" (*Chicago & N. W. Tr. Co.* v. *Kalo Brick & Tile Co.* (1981) 450 U.S. 311, 317 [67 L.Ed.2d 258, 264-265, 101 S.Ct. 1124]; see *English* v. *General Electric Co.* (1990) 496 U.S. 72, __, __ [110 L.Ed.2d 65, 74, 81, 110 S.Ct. 2270]; *Malone* v. *White Motor Corp.* (1978) 435 U.S. 497, 504 [55 L.Ed.2d 443, 450, 98 S.Ct. 1185].)

Federal law preempts state law only when (1) Congress makes its intent to preempt known through explicit statutory language, (2) Congress intends to exclusively occupy the field, or (3) state law actually conflicts with federal law to such an extent that it frustrates the congressional purpose. (See, e.g., *English* v. *General Electric Co.*, *supra*, 496 U.S. at pp. __, __ [110 L.Ed.2d at pp. 74, 81]; *Louisiana Public Service Comm'n* v. *FCC* (1986) 476 U.S. 355, 368-369 [90 L.Ed.2d 369, 381-382, 106 S.Ct. 1890]; *Silkwood* v. *Kerr-McGee Corp.* (1984) 464 U.S. 238, 248 [78 L.Ed.2d 443, 452, 104 S.Ct. 615].) With respect to the third instance, the conflict must be actual. A general tension between state law and broad or abstract goals of federal law is insufficient. (See *Commonwealth Edison Co.* v. *Montana* (1981) 453 U.S. 609, 633-634 [69 L.Ed.2d 884, 904-905, 101 S.Ct. 2946].) Legal rights based on state law are not abrogated by preemption unless there is a significant conflict between the operation of the state law and concretely identifiable federal interests. (*Boyle* v. *United Technologies Corp.* (1988) 487 U.S. 500, 507 [101 L.Ed.2d 442, 454-455, 108 S.Ct. 2510].)

The party claiming preemption, Wells Fargo Bank here, bears the burden of establishing preemption. (*Silkwood* v. *Kerr-McGee Corp.*, *supra*, 464 U.S. at p. 255 [78 L.Ed.2d at p. 457]; *Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 937 [216 Cal.Rptr. 345, 702 P.2d 503].)

Application of these well-established principles of preemption compels the conclusion that section 24(5) does not preempt the state law employment rights of branch managers.

First, Congress has not "unmistakably . . . ordained" (*Chicago & N. W. Tr. Co.* v. *Kalo Brick & Tile Co.*, *supra*, 450 U.S. at p. 317 [67 L.Ed.2d at p. 265]) in section 24(5) its intent to preempt state law at the level of branch managers.

Second, Congress has not exclusively occupied the field. State-chartered banks have been in existence since before the Act's passage in 1864, and the application of state law to national banks is well established. The United

States has a dual banking system: it has state as well as national banks. (See, e.g., 12 U.S.C. § 35; Miller, *The Future of the Dual Banking System* (1987) 53 Brooklyn L.Rev. 1.) Traditionally, national banks have been subject to the laws of the states. (See, e.g., *Anderson Nat. Bank* v. *Luckett* (1944) 321 U.S. 233, 248 [88 L.Ed. 692, 705-706, 64 S.Ct. 599, 151 A.L.R. 824]; *National Bank* v. *Commonwealth* (1869) 76 U.S. (9 Wall.) 353, 362 [19 L.Ed. 701, 703]; *Perdue* v. *Crocker National Bank, supra,* 38 Cal.3d at p. 937.)

Third, there is no actual conflict between California law and federal law. As the majority concedes, its decision in this case cannot have any effect on the original purposes of the Act to develop a national currency, provide a financial market for Civil War bonds, and develop national banks as depositories of government funds. (Maj. opn., *ante,* p. 1089.) Moreover, in this case Wells Fargo Bank has not shown that a branch manager's assertion of state-law employment rights undermines the maintenance or stability of national banks, or that it otherwise frustrates the congressional purpose. To say that Wells Fargo Bank has not met its burden of establishing federal preemption in this regard is an understatement. Wells Fargo Bank has not shown the existence of a conflict between state law and concretely identifiable federal interests. Because branch managers do not perform functions analogous to those performed by a president, vice-president, or cashier, application of state law to branch managers does not at all conflict with federal law. Although it is possible to create a conflict by giving the term "other officers" an expansive construction, such an interpretation is neither supported by the statutory language nor necessary to effectuate the statutory purpose. The majority's efforts to support its broad construction do not withstand analysis, as demonstrated below.

IV

The majority bases its conclusion that branch managers are national bank officers within the meaning of section 24(5) on a collage of loosely related legal concepts. When, however, an attempt is made to follow the majority's concepts and arguments to their conclusion, serious gaps in the reasoning appear and we are led into an analytical abyss.

The majority relies heavily on *Alegria* v. *Idaho First Nat. Bank* (1986) 111 Idaho 314 [723 P.2d 858, 860], which held that an assistant branch manager is an officer of a national bank for purposes of section 24(5). In reaching that conclusion, the *Alegria* court stated that Congress, in passing the Act, sought "to establish an independent national system in order to maintain the stability of, and promote the welfare of, national banks." (723 P.2d at p. 860; see maj. opn., *ante,* pp. 1089, 1092.) As a general abstract

principle, this statement is correct. But in *Alegria* the Idaho court failed to explain the relevance of that statement to the determination whether an assistant branch manager was an "officer" under section 24(5). The mere assertion of a general abstract principle, without more, is not helpful in resolving the specific question whether Congress intended that a bank's branch managers be considered "other officers" within the meaning of section 24(5), and that state law be preempted. Neither the Idaho court in *Alegria* nor the majority opinion in this case explains how allowing branch managers to assert state law employment rights will somehow threaten the stability of the national banking system or imperil its welfare.

The majority's reliance on *Westervelt* v. *Mohrenstecher, supra,* 76 Fed. 118, and *Mackey* v. *Pioneer Nat. Bank, supra,* 867 F.2d 520 (maj. opn., *ante,* p. 1089), is curious. *Westervelt* involved the dismissal of a cashier, one of the officers specifically enumerated in section 24(5), following his embezzlement of bank funds. (76 Fed. at p. 120.) At issue in *Mackey* was the termination of a bank's executive vice-president for sexual harassment of a female employee. (867 F.2d at p. 522.) Thus, *Westervelt* and *Mackey* concerned bank officials clearly within the terms of section 24(5); in each case the discussion is consistent with the conclusion in this opinion that the term "other officers," as used in section 24(5), refers to a national bank's chief operating officers.

Equally misplaced is the majority's reliance on authorities that establish that a bank is bound by the acts of its agents when the acts are within the scope and course of the agent's authority. (Maj. opn., *ante,* pp. 1089-1090, 1091.) This case does not present a question of agency. Rather, the issue involves the proper definition of the term "other officers" as used in section 24(5).

The majority assumes that because officers are agents, agents must be officers. The assumption not only misses the point, it is also legally incorrect. It misses the point because we are not here concerned with the liability of the bank to third parties based on the acts of its agents; the issue here involves the employment rights of the bank's personnel. It is legally incorrect because, while officers are agents, agents are not necessarily officers. (2 Fletcher, Cyclopedia Corporations (rev. 1990) § 266, pp. 10-11.) The mistake of inappropriately expanding section 24(5) by judicially confusing the term "officers" with the term "agents" has been made before (*Harrington* v. *First Nat. Bank* (1873 N.Y.) 1 Thomp. & C. 361, 366 [teller of bank found to be an officer]), and the impropriety of so doing has been noted before (*Case* v. *First Nat. Bank* (1908) 59 Misc. 269 [109 N.Y.S. 1119, 1120] ["solicitor of business," although an agent, not an officer]).

The majority observes that the word "officer" is capable of being broadly interpreted in the context of banking. (Maj. opn., *ante,* p. 1090.) But the mere fact that a word can be broadly interpreted does not mean it should be so interpreted. All ambiguous terms are capable of more than one construction. The fact that the banking industry has broadly interpreted the term "officer," as evidenced by its practice of giving large numbers of bank employees the title of vice-president (maj. opn., *ante,* p. 1090), does not aid in resolving the issue of whether Congress intended to preempt the state law rights of branch managers under section 24(5). Banks do not determine congressional intent—courts do.

Because, as shown above, the majority's reliance on a collage of loosely related legal concepts is misplaced, its four-part "test" to determine whether a person is an "officer" of a national bank is invalid. (Maj. opn., *ante,* p. 1091.) The majority concludes that an "officer" within the meaning of section 24(5) is a person (1) who holds an office created by the bank's board of directors and listed in the bylaws; (2) who is appointed by the bank's board of directors, either directly or by delegation of authority; (3) who has express legal authority to bind the bank in transactions with third parties by signing documents; and (4) who has decisionmaking authority, "however it might be limited by bank rule or policy," which relates to fundamental banking operations in such a manner that the authority might "affect potentially the public's trust in the banking institution." (Maj. opn., *ante,* p. 1091.)

Contrary to the majority's assertion (maj. opn., *ante,* p. 1091), its test is not derived from the language and purpose of section 24. Nor can support for this test be found in the majority's discussion of the "history and practice of the banking industry." That discussion consists largely of a recitation of inapplicable agency principles derived from cases that happened to involve banks, and a demonstration that the ambiguous term "officer" has been given a broad interpretation in other contexts.

I agree with the first two parts of the majority's test that to be an officer the person must hold an office derived from the authority of the board of directors and be appointed by the board of directors. (Maj. opn., *ante,* p. 1091.)

I cannot, however, accept the third part of the majority's test that the authority to bind the bank in transactions with third parties is an essential characteristic of a bank officer under section 24(5). My reasons are twofold.

First, the majority has read into the statutory language at issue the words "and agents." The majority fails to recognize that this case does not involve

a question of agency law. Second, the majority's approach is both too narrow and too broad. It is underinclusive because it limits "other officers" to those dealing with third parties even though section 24(5) is not so restricted. Thus, a high corporate official charged with bankwide responsibility for the bank's operations, such as a bank's general auditor or chief loan examiner, would *not* be an officer because that official ordinarily does not deal directly with third parties. The majority's approach is overinclusive because it defines a branch manager, an employee with restricted authority over a limited constituent part of the bank, as an officer.

In the fourth part of its test, the majority merely reiterates its mistaken reliance on agency theory, with the added observation that, to be considered an officer, the bank official's decisionmaking authority must relate to "fundamental banking operations." (Maj. opn., *ante*, p. 1091.) The majority's reliance on agency as the governing legal concept is improper for the reasons discussed earlier. The majority's observation that the person's involvement must be "fundamental" to banking operations, a concept the majority does not attempt to define, would be correct if it then recognized that a bank's branch managers do not engage in fundamental banking operations within the meaning of section 24(5), that is, they do not perform overall banking functions similar to those of the president, vice-president, and cashier. Branch managers, of which there may be hundreds in a bank (see maj. opn., *ante*, p. 1099), are not "the bank"; they are each the manager of "a branch," a constituent part of the bank; they do not have authority over or responsibility for the fundamental operations of *the bank* as a whole. To determine that a branch manager's decisionmaking authority *"however it might be limited by bank rule or policy"* (maj. opn., *ante*, p. 1091, italics added) relates to "fundamental banking operations," it is necessary to consider the scope of the bank's rules and policies or their actual application. This the majority has not done.

Finally, the majority incorrectly applies its own test here. There is little evidence to support the majority's conclusion that branch managers engage in fundamental banking operations. This case is before us in the context of a review of the denial of the bank's motion for summary judgment. In its motion, the bank essentially argued that officers are those employees to whom it has given a corporate title and that the bank may, consistent with section 24(5), delegate the authority to dismiss. The trial court denied the motion solely on the ground that the bank could invoke the extraordinary dismissal privilege only if the dismissal was done by the board of directors itself. The record is insufficient to support the majority's conclusion that as a matter of law all of a bank's branch managers, or at least the branch managers involved here, engage in fundamental banking operations. In this case, there was very little evidence before the trial court relating to banking

operations or the roles and responsibilities of branch managers. For example, not before us are the bank's policies or rules setting forth both the authority and responsibility of branch managers, or the limitations imposed by the bank on its branches and branch managers, or evidence of the actual duties and roles of branch managers. If we are to conclude that, as used in section 24(5), branch managers are "other officers" because they engage in "fundamental banking operations," we should do so based on specific evidence.[1]

## V

To summarize, the majority correctly concludes that a bank may not both delegate the dismissal power and claim preemption under section 24(5) of the Act. But the majority's conclusion that branch managers are bank officers within the meaning of section 24(5) violates the statutory language and purpose, and ignores basic principles of federal preemption.

The abstract congressional objectives that the majority identifies are not related to the specific issue presented: whether branch managers are "officers" under section 24(5).

The "test" set forth by the majority is based on inapplicable agency principles and on determinations of "fundamental banking operations." Agency, however, is not in issue here, and the record is insufficient to enable this court to determine what are "fundamental banking operations."

I would hold that the state-law employment rights of branch managers have not been preempted by federal law because a bank's branch managers are not "other officers" within the meaning of section 24(5) of the National Bank Act.

Broussard, J., concurred.

---

[1] The deposition testimony of the bank's chairman and chief executive officer hardly fills the void. The bank's chairman, after having testified that an officer is a person who has authority to sign cashier's checks and that being an officer does not necessarily have anything to do with having a title, testified as follows: "[Q.] Does it [the definition of officer] have anything to do with one's power? [A.] I say no. It has been so long since I've been involved in that sort of thing. As I recall, when you become eligible to sign bank documents, bank cashier's checks, money order and so forth, that is when you were designated an officer of the bank. Now, that is old information." The majority's characterization of this testimony as supporting its conclusion that the term "officer" is to be broadly interpreted is far too sweeping.