TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 94-1011 |
| of | : | |
| | : | July 31, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE DANIEL E. BOATWRIGHT, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a nurse-midwife perform an episiotomy pursuant to a standardized procedure?

CONCLUSION

A nurse-midwife may not perform an episiotomy pursuant to a standardized procedure.

ANALYSIS

Under provisions of the Nursing Practice Act (Bus. & Prof. Code, §§ 2700-2837; "Act")[1] the Board of Registered Nursing ("Board") issues certificates to practice nurse-midwifery to persons licensed under the Act who are specially qualified (§§ 2746-2746.8). The practice of nurse-midwifery[2] is defined in section 2746.5 as follows:

_____

[1]Unidentified section references hereafter are to the Business and Professions Code.

[2]This opinion concerns the practice of nurse-midwifery, as distinguished from the practice authorized under the Licensed Midwifery Practice Act of 1993 (§§ 2505-2521).

"The certificate to practice nurse-midwifery authorizes the holder, under the supervision of a licensed physician and surgeon, to attend cases of normal childbirth and to provide prenatal, intrapartum, and postpartum care, including family-planning care, for the mother, and immediate care for the new-born.

"As used in this chapter, the practice of nurse-midwifery constitutes the furthering or undertaking by any certified person, under the supervision of a licensed physician and surgeon who has current practice or training in obstetrics, to assist a woman in childbirth so long as progress meets criteria accepted as normal. All complications shall be referred to a physician immediately. The practice of midwifery does not include the assisting of childbirth by any artificial, forcible, or mechanical means, nor the performance of any version.

"As used in this article, `supervision' shall not be construed to require the physical presence of the supervising physician.

"A nurse-midwife is not authorized to practice medicine and surgery by the provisions of this chapter."[3]

In 62 Ops.Cal.Atty.Gen. 225 (1979), we concluded that section 2746.5 did not authorize a nurse-midwife to perform episiotomies (a small surgical incision of the perineum to allow a greater opening through which the baby emerges) under the direction of a physician. Whether a nurse-midwife may do so pursuant to a standardized procedure was expressly left undetermined. (*Id*., at pp. 228-229 ["Whether certified nurse-midwives . . . may perform episiotomies . . . under standardized procedures within the meaning of sections 2725 and 2726 involves separate issues that are not addressed in this opinion"].) We now address that question.

Section 2725 describes "standardized procedures" as follows:

"In amending this section at the 1973-74 session, the Legislature recognizes that nursing is a dynamic field, the practice of which is continually evolving to include more sophisticated patient care activities. It is the intent of the Legislature in amending this section at the 1973-74 session to provide clear legal authority for functions and procedures which have common acceptance and usage. It is the legislative intent also to recognize the existence of overlapping functions between physicians and registered nurses and to permit additional sharing of functions within organized health care systems which provide for collaboration between physicians and registered nurses. Such organized health care systems include, but are not limited to,

---

[3] The provision of "prenatal, intrapartum, and postpartum care" at childbirth constitutes the practice of medicine. (*Northrup* v. *Superior Court* (1987) 192 Cal.App.3d 276, 280.) Thus the last sentence of section 2746.5 must be construed to prohibit the practice of medicine other than as permitted in the statute itself or by some other provision of law. (See *Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 83; 67 Ops.Cal.Atty.Gen. 122, 126-127 (1984).)

health facilities licensed pursuant to Chapter 2 (commencing with Section 1250) of Division 2 of the Health and Safety Code, clinics, home health agencies, physicians' offices, and public or community health services.

"The practice of nursing within the meaning of this chapter means those functions, including basic health care, which help people cope with difficulties in daily living which are associated with their actual or potential health or illness problems or the treatment thereof which require a substantial amount of scientific knowledge or technical skill, and includes all of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d)   Observation of signs and symptoms of illness, reactions to treatment, general behavior, or general physical condition, and (1) determination of whether such signs, symptoms, reactions, behavior, or general appearance exhibit abnormal characteristics; and (2) implementation, based on observed abnormalities, of appropriate reporting, or referral, or standardized procedures, or changes in treatment regimen in accordance with standardized procedures, or the initiation of emergency procedures.

"`Standardized procedures,' as used in this section, means either of the following:

"(1)   Policies and protocols developed by a health facility licensed pursuant to Chapter 2 (commencing with Section 1250) of Division 2 of the Health and Safety Code through collaboration among administrators and health professionals including physicians and nurses;

"(2)     Policies and protocols developed through collaboration among administrators and health professionals, including physicians and nurses, by an organized health care system which is not a health facility licensed pursuant to Chapter 2 (commencing with Section 1250) of Division 2 of the Health and Safety Code.  Such policies and protocols shall be subject to any guidelines for standardized procedures which the Division of Allied Health Professions of the Medical Board of California and the Board of Registered Nursing may jointly promulgate; and if promulgated shall be administered by the Board of Registered Nursing.

"Nothing in this section shall be construed to require approval of standardized procedures by the Division of Allied Health Professions of the Medical Board of California or the Board or Registered Nursing."[4]

---

[4]Section 2726, also referenced in our 1979 opinion, states:   "Except as otherwise provided herein, this chapter confers no authority to practice medicine or surgery."

An applicant for a certificate to practice nurse-midwifery must, as noted at the outset, initially be licensed by the Board as a registered nurse in addition to complying with all the provisions, including educational prerequisites, established by the Board for certification as a nurse-midwife. (§§ 2746, 2746.1, 2746.2.) Accordingly, the provisions of section 2725, subdivision (d), pertaining to standardized procedures, are fully applicable to certified nurse-midwives. (See, e.g., § 2746.51 [furnishing of drugs or devices under standardized procedure]; see also Cal. Code Regs., tit. 16, § 1463.)[5]

As authorized by section 2725, subdivision (d)(2), the Board, in conjunction with the Medical Board of California, has promulgated guidelines (Regs. 1470-1474) for the adoption of standardized procedures in clinics, home health agencies, physicians' offices, and public or community health services.[6] Regulation 1474, subdivision (b), provides:

"Each standardized procedure shall:

"(1) Be in writing, dated and signed by the organized health care system personnel authorized to approve it.

"(2) Specify which standardized procedure functions registered nurses may perform and under what circumstances.

"(3) State any specific requirements which are to be followed by registered nurses in performing particular standardized procedure functions.

"(4) Specify any experience, training, and/or education requirements for performance of standardized procedure functions.

"(5) Establish a method for initial and continuing evaluation of the competence of those registered nurses authorized to perform standardized procedure functions.

"(6) Provide for a method of maintaining a written record of those persons authorized to perform standardized procedure functions.

"(7) Specify the scope of supervision required for performance of standardized procedure functions. . . .

---

[5]Unidentified regulation references hereafter are to title 16 of the California Code of Regulations.

[6]These are "organized health care systems" that are not health facilities licensed under Health and Safety Code section 1253. We are informed that 98 percent of the births attended by nurse-midwives during 1993 took place in licensed health facilities, such as hospitals, which would not be subject to the Board's guidelines. Nevertheless, we view the guidelines as helpful in determining the scope of the policies and protocols in question.

"(8) Set forth any specialized circumstances under which the registered nurse is to immediately communicate with a patient's physician concerning the patient's condition.

"(9) State the limitations on settings, if any, in which standardized procedure functions may be performed.

"(10) Specify patient record keeping requirements.

"(11) Provide for a method of periodic review of the standardized procedures."

Regulation 1472 provides that a registered nurse may perform standardized procedure functions only under the conditions specified in a health care system's standardized procedures, and must provide the system with satisfactory evidence that the nurse meets its experience, training, and/or education requirements to perform such functions.

In our 1979 opinion, we concluded that a nurse-midwife could not perform an episiotomy because it "requires the severance of tissue and is therefore a surgical procedure" involving "the use of scissors or scalpel . . . an artificial and mechanical means of assisting childbirth within the meaning of section 2746.5." (62 Ops.Cal.Atty.Gen., *supra*, 228.) Section 2746.5 expressly states: "The practice of midwifery does not include the assisting of childbirth by any artificial, forcible, or mechanical means, nor the performance of any version."[7] May a standardized procedure adopted under the general grant of authority of section 2725, subdivision (d), authorize a nurse-midwife to perform what the Legislature has declared a nurse-midwife may not perform in the practice of midwifery?

In resolving this question, we may rely upon well established rules of statutory construction. "`The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.) "A statute must be construed `in the contest of the entire statutory system of which it is a part, in order to achieve harmony among the parts.' [Citation.]" (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1009.) "[W]hen a special and a general statute are in conflict, the former controls. (Code Civ. Proc., § 1859.) `"[T]he special act will be considered as an exception to the general statute whether it was passed before or after such general enactment."' [Citations.]" (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420.)

The provisions of section 2725 regarding standardized procedures must be read in light of the express limitations of section 2746.5. The general terms of the former may not be interpreted as granting authority to adopt policies and protocols allowing what the latter forbids. Such construction gives meaning to each of the statutes and harmonizes the provisions of the Act as a whole.

---

[7]"Version" is "the manual operation of turning a fetus in the uterus to aid delivery." (Webster's Third New Internat. Dict. (1971) p. 2545.)

We recognize that since our 1979 opinion, the Board has administratively construed section 2746.5 as including the performance of episiotomies within practice of nurse-midwifery. In 1988 it determined that an episiotomy was part of a "normal childbirth" and "progress [meeting] criteria accepted as normal" rather than involving "complications" and did not constitute "the assisting of childbirth by any artificial, forcible, or mechanical means."[8] Moreover, episiotomies are part of the nurse-midwifery curriculum. (Reg. 1462, subd. (b)(4)(B).)[9] As a consequence, episiotomies are now commonly performed by nurse-midwives, both in California as well as nationally.

Nevertheless, we find no basis for concluding that the use of scissors or a scalpel to make a surgical incision is anything other than "the assisting of childbirth by any artificial, forcible, or mechanical means." We believe that the Legislature has used clear and unambiguous terms in section 2746.5 with respect to whether a nurse-midwife may perform surgery. If episiotomies are to be performed by nurse-midwives, the language of section 2746.5 requires amendment; neither this office nor the Board may rewrite the statute. (See *Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097 ["`. . . courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions'"].)

In answer to the question presented, therefore, we conclude that a nurse-midwife may not perform an episiotomy pursuant to a standardized procedure.

* * * * *

---

[8] However, it is to be presumed that the Legislature was aware of our 1979 opinion and if our conclusion were contrary to its intent, some corrective measure would have been adopted with respect to the language of section 2746.5. (See *Calif. Assn. of Psych. Providers* v. *Rank* (1990) 51 Cal.3d 1, 17; 71 Ops.Cal.Atty.Gen. 39, 44 (1988).)

[9] The Board may of course require that the curriculum for nurse-midwifery include subjects outside the scope of practice. (Cf., *Cleveland Chiropractic College* v. *State Bd. of Chiropractic Examiners* (1970) 11 Cal.App.3d 25, 43 ["`. . . there is certainly nothing in the law which prohibits . . . requiring that prospective chiropractors be instructed in areas which are beyond the scope of the chiropractor's competence"].)