DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant, Mary L. Boesch, appeals from the judgment of the Summit County Court of Common Pleas granting summary judgment against Boesch on each of her claims. We affirm in part and reverse in part.
 I {¶ 2} Boesch had twenty years experience in banking and was a Business Banking Officer at Champaign National Bank ("Champaign") where she received favorable performance evaluations, praise from her supervisors, and a promotion. However, she was terminated on August 11, 2006, after failing to fully answer an annual questionnaire required by Champaign's insurance carrier. Boesch claims to be the victim of discriminatory conduct and retaliation after she complained of gender and wage discrimination.
 {¶ 3} In her complaint, Boesch alleged employment discrimination during the time she was actively engaged as an employee of Champaign, as well as retaliatory discharge, both *Page 2 
pursuant to R.C. 4112. Defendants Champaign and Futura Banc Corp. ("Futura"), Champaign's holding company, moved for summary judgment. Boesch responded in opposition. In its November 21, 2007, judgment entry, the trial court granted summary judgment for Champaign after finding that Boesch's state law claims were preempted by the National Bank Act ("NBA"), 12 U.S.C. § 24 (Fifth), and that there was no material dispute of fact regarding Boesch's status as a bank "officer" under the NBA. The court granted summary judgment for Futura because it determined there was no material dispute of fact over Boesch's alleged status as a Futura employee.
 {¶ 4} Boesch timely appealed, raising a single assignment of error for our review.
 II Assignment of Error "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANTS BECAUSE IT INCORRECTLY FOUND THE NATIONAL BANK ACT, 12 U.S.C. § 24
(FIFTH) PREEMPTED BOESCH'S STATE LAW EMPLOYMENT DISCRIMINATION CLAIMS."
 {¶ 5} Boesch argues that the trial court erred in granting summary judgment because it incorrectly found that the NBA preempted her R.C. 4112 employment discrimination and retaliatory discharge claims. We disagree with respect to Boesch's employment discrimination claim against Champaign. However, we agree with respect to Boesch's retaliatory discharge claim against Champaign. Further, we do not reach this issue with respect to Boesch's claims against Futura because we agree with Futura that there is no material dispute in fact as to Boesch's employment status with Futura.
 {¶ 6} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving *Page 3 
any doubt in favor of the non-moving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12.
 {¶ 7} Pursuant to Civ. R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 9} We first consider de novo, whether the NBA preempts state law employment discrimination and retaliation claims.
 {¶ 10} The NBA provides that national banks shall have the power:
 "To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places." 12 U.S.C. § 24 (Fifth).
State law provides that it is an unlawful discriminatory practice:
 "For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to *Page 4 
refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02(A).
 {¶ 11} With respect to retaliation, state law provides that it is an unlawful discriminatory practice:
 "For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." R.C. 4112.02(I).
 {¶ 12} The power granted by the NBA to a national bank's board of directors to appoint and dismiss officers at "pleasure" conflicts with the Ohio statutory provisions precluding employment discrimination and retaliation.
 {¶ 13} "A fundamental principle of the Constitution is that Congress has the power to preempt state law." Crosby v. Nat'l Foreign TradeCouncil (2000), 530 U.S. 363, 372. In Michigan Canners Freezers Ass'n,Inc. v. Agricultural Mktg Bargaining Bd, the Supreme Court stated:
 "Federal law may pre-empt state law in any of three ways. First, in enacting the federal law, Congress may explicitly define the extent to which it intends to preempt state law. Second, even in the absence of express pre-emptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government. Finally, if Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible[.]" (Internal citations omitted.) Michigan Canners Freezers Ass'n, Inc. v. Agricultural Mktg. Bargaining Bd. (1984), 467 U.S. 461, 469.
A conflict occurs where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz (1941), 312 U.S. 52, 67. *Page 5 
 {¶ 14} In this case, we must consider whether the Ohio statute prohibiting employment discrimination and retaliation is preempted by the NBA because it conflicts with a national bank's power to appoint and dismiss its officers "at pleasure." The Sixth Circuit has repeatedly held that the "at pleasure" language preempts state employment law in this regard. In Wiskotoni v. Michigan Natl. Bank-West, the Sixth Circuit noted that the NBA "has consistently been construed by both federal and state courts as preempting state law governing employment relations between a national bank and its officers and depriving a national bank of the power to employ its officers other than at pleasure."Wiskotoni v. Michigan Natl. Bank-West (C.A.6, 1983), 716 F.2d 378, 387. In Ana Leon T. v. Fed. Reserve Bank of Chicago, the Sixth Circuit found that Michigan employment discrimination law was preempted by Section 4 of the Federal Reserve Act, 12 U.S.C § 341 (Fifth), which provides that a Federal Reserve Bank may dismiss employees "at pleasure." Ana Leon T.v. Fed. Reserve Bank of Chicago (C.A.6, 1987), 823 F.2d 928, 931. See, also, Arrow v. Fed. Reserve Bank of St. Louis (C.A.6, 2004),358 F.3d 392, 393 (noting the similarity in the "at pleasure" language between the Federal Reserve Act and the NBA and finding that such language preempts state employment law claims). Moreover, in Farmer v. Natl. CityCorp., the Southern District's analysis of Sixth Circuit and Northern District court decisions specifically concluded that the NBA preempts all state law actions, including employment discrimination, and not just wrongful termination. Farmer v. Natl. City Corp. (S.D, Ohio, Sept. 12, 1995), No. C-2-94-966, at *6-7.
 {¶ 15} However, Boesch argues that this Court should adopt the approach taken by the Eighth District in White v. Fed. ReserveBank. In White, the court held that the Federal Reserve Act does not preempt state employment discrimination claims. White v. Fed. ReserveBank *Page 6 
(1995), 103 Ohio App.3d 534, 539. In so doing, the court indicated that it declined to follow the Sixth Circuit's holding in Ana Leon T. Id. at 537. The court determined that the "at pleasure" language is nothing more than an "at-will" employment arrangement and noted that discrimination is an exception to "at-will" employment. Id. at 538. The court noted that Federal Reserve Banks are subject to employment discrimination claims under Title VII of the Civil Rights Act of 1964, and therefore should also be subject to state employment law.
 {¶ 16} However, such reasoning fails to recognize that national banks hold a form of "federal instrumentality" status. Franklin Natl. Bank v.New York (1954), 347 U.S. 373, 375. This means that national banks are "shielded by the Supremacy Clause from direct state regulation unless Congress provides `clear and unambiguous' authorization for such regulation." Goodyear Atomic Corp. v. Miller (1988), 486 U.S. 174, 180, quoting EPA v. State Water Resources Control Bd. (1976), 426 U.S. 200,211. The powers of national banks are "grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law."Barnett Bank of Marion Cty., N.A. v. Nelson (1996), 517 U.S. 25, 32. Further, "the presumption against federal preemption disappears when federal authority substantially occupies a field of regulation."Wachovia Bank v. Watters (2005), 431 F.3d 556, 560, n. 3., quotingFlagg v. Yonkers Sav. Loan Ass'n (C.A.2., 2005), 396 F.3d 178, 183. "[F]ederal control shields national banking from unduly burdensome and duplicative state regulation." Watters v. Wachovia Bank, N.A. (2007),127 S.Ct. 1559, 1566-67, citing Beneficial Natl. Bank v. Anderson
(2003), 539 U.S. 1, 10. Hence, the trial court properly found that the employment discrimination and retaliation provisions of R.C. 4112 are in conflict with, and therefore preempted by, the NBA. *Page 7 
 {¶ 17} Next, to determine whether NBA preemption of R.C. 4112 applies to Boesch, we must consider whether Champaign met its Dresher burden to show that Boesch was a bank "officer" of Champaign within the meaning of the NBA. We note initially that Boesch has two distinct claims against Champaign. Her first claim addresses employment discrimination against Champaign while she was actively employed by the bank. Her second claim addresses retaliatory discharge from the bank. We therefore need to make two separate inquiries into her bank "officer" status as it pertains to the NBA. The first inquiry, relating to her employment discrimination claim while actively employed, is directed to whether she was appointed to her position in the manner contemplated by the NBA. In this inquiry, we do not address the manner of her termination because it is not relevant to the claim relating to her active employment. Had Boesch filed her first claim prior to her termination, our inquiry would be limited to whether she was a bank "officer" pursuant to the NBA while actively employed to satisfy preemption. It would not be possible to inquire into the manner of her termination because she would still be actively employed. If it were otherwise, employment discrimination claims of active employees could never be preempted by the NBA. However, in the second inquiry, we examine whether her termination comports with the NBA because her second claim is one of wrongful discharge. Here, the manner of her termination is now relevant to whether the bank satisfies the requirements of the NBA.
 {¶ 18} We first inquire whether Boesch was appointed to an officer position and performed in an officer capacity consistent with the NBA to determine whether NBA preemption applies to her state law discrimination claim relating to the time in which she was actively engaged as an employee of Champaign. *Page 8 
 {¶ 19} In Wiskotoni, the Sixth Circuit looked to whether a bank branch manager was appointed by the board of directors when determining whether that manager was an "officer" of the bank. Wiskotoni, 716 F.2d at 387. See, also, Mackey v. Pioneer Natl. Bank, 867 F.2d 520, 525 (finding Mackey was an officer of the bank because his title was specifically listed in the NBA, he was hired by the bank president under authority delegated by the board of directors, and his termination was ratified by the board of directors). The January 21, 2003, meeting minutes of the Champaign board of directors approved the hiring of Boesch as a "Business Banking Officer." In her deposition, Boesch testified that she was in an officer position with Champaign the entire time she was employed by the bank. Boesch also said she had lending authority up to $100,000. Champaign's hiring of Boesch as an officer meets the Sixth Circuit criteria for officer status and, insofar as she functioned in an officer capacity throughout her term of employment with Champaign, Boesch may be considered a bank "officer" within the meaning of the NBA at least as it relates to the course of her employment prior to her termination.
 {¶ 20} Boesch contends that the four-part test provided in Wells Fargov. Superior Court of San Francisco (1991), 53 Cal.3d 1082, should be used to determine whether she was a bank "officer" under the terms of the NBA.[1] However, the Wells Fargo test contains additional *Page 9 
factors not included in the plain language of the NBA. The NBA simply states that the board of directors has the power to "appoint *** officers," to "define their duties," and to "dismiss such officers *** at pleasure." 12 U.S.C. § 24 (Fifth).
 {¶ 21} Moreover, the Wells Fargo test conflicts with the bank "officer" determination criteria set forth by the Sixth Circuit inWiskotoni. See Wiskotoni, 716 F.2d at 387 (holding that the only factors in the determination of bank "officer" status were whether the employee was appointed and dismissed by the board of directors). See, also,Farmer v. Natl. City Corp. at *5 (holding that it was unnecessary to use the Wells Fargo test in determining whether Farmer was a bank "officer"). We are not persuaded that the Wells Fargo test should be applied to the determination of Boesch's bank "officer" status.
 {¶ 22} We therefore conclude under the test set forth inWiskotoni and on the record before us that Champaign satisfied itsDresher burden to show that Boesch was appointed to the position of Business Banking Officer and was employed as a bank "officer" within the meaning of the NBA. Furthermore, Boesch did not meet her reciprocal burden of providing evidence that there is a genuine dispute over a material fact regarding her appointment by the Champaign board of directors or her status as a bank "officer" while she was actively employed by Champaign. Therefore, the trial court properly concluded that the NBA preempts Boesch's state law claims against Champaign insofar as they relate to employment discrimination during the course of her employment prior to her termination from the bank.
 {¶ 23} To determine whether the NBA preempts Boesch's state law retaliatory discharge claim against Champaign, we must next inquire whether Champaign met its Dresher burden to show that its board of directors properly exercised its authority when it terminated Boesch, or whether, as Boesch contends, there was a material dispute of fact on the issue of termination. *Page 10 
 {¶ 24} Boesch was terminated by Champaign's President, Michael J. Lamping, in a meeting on August 11, 2006. Champaign submitted the affidavit of Lamping, in his capacity as its Chairman, President, and Chief Executive Officer; in which he asserted that the bank's board of directors terminated Boesch and that such action is reflected in an amendment to the minutes of the meeting in which the board made that decision. Boesch acknowledges Lamping's affidavit, but argues that the amendment was undated and dealt with no other bank business. Boesch also notes that Champaign did not provide the original minutes of the board's meeting. She alleges that the amendment appears to have been created for litigation purposes and concludes that there is a question as to whether the ratification was "prompt" and appropriate under the NBA. We agree with Boesch that there is a genuine issue of material fact as to whether she was terminated in the manner established by the NBA. First, there is the question of the authenticity of the undated amendment and, therefore, whether it constitutes valid board ratification of her termination. Second, we are unable to determine from the record whether the board had delegated its authority to Lamping to terminate Boesch.See Mackey, supra. Hence, there is the issue of whether Boesch's termination was accomplished by the board of directors, or whether it was an individual action.
 {¶ 25} Therefore, we conclude that Boesch has met her reciprocalDresher burden insofar as it relates to whether her termination comports with the dismissal of a bank "officer" in the manner established by the NBA. Accordingly, we find that the trial court erred in granting summary judgment for Champaign in this regard. We note that because Boesch was appointed by the board as an officer and functioned in an officer capacity, the NBA preempts her state law claims as they relate to employment discrimination while she was actively employed by the bank. However, because there is a material dispute of fact regarding the method of her *Page 11 
termination, we cannot conclude that summary judgment is warranted with respect to her retaliatory discharge claim against Champaign.
 {¶ 26} We must next consider whether Boesch was an "employee" of Futura and, if so, whether Futura is included within the provisions of the NBA that preempt the Ohio employment discrimination and retaliation statutes. The R.C. 4112.01(A)(2) definition of an employer includes "any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." R.C.4112.01(A)(3) defines an employee as "an individual employed by any employer [.]" In Koballa v. Twinsburg Youth Softball League, this Court noted:
 "The statute does not define `hire' or `employment.' Black's Law Dictionary (7 Ed.1999) 735, defines `hire' as `[t]o engage the labor or services of another for wages or other payment.' It defines `employment' as `[w]ork for which one has been hired and is being paid by an employer.' Id. at 545." Koballa v. Twinsburg Youth Softball League, 9th Dist. No. 23100, 2006-Ohio-4872, at ¶ 19.
 {¶ 27} In a September 14, 2007, affidavit, Lamping, in his capacity as Chairman of the Board, President, and Chief Executive Officer of Futura; indicated that Futura has never had any operational employees, never paid wages to Boesch, never hired Boesch, and never had services performed for it by Boesch. Furthermore, in her deposition, Boesch testified that she never got a paycheck from Futura, never got a W-2 from Futura, and never had any direct employment with Futura. Boesch received her paycheck and W-2 from Champaign and considered herself an employee of Champaign.
 {¶ 28} Boesch argues that the employee handbook and compensation policy material she received, as well as the code of conduct and dress code acknowledgments she provided, were all designated "Futura Banc Corp." rather than "Champaign Bank." Boesch contends that this demonstrates a genuine issue of material fact as to whether she was an employee of Futura. *Page 12 
However, "`[e]mployee' status depends in large part upon the degree to which [Boesch] is economically dependent upon the institution charged with discrimination." Id. at ¶ 21, citing Neff v. Civ. Air Patrol
(S.D.Ohio 1996), 916 F.Supp. 710, 712. Boesch has presented no evidence of economic dependency upon Futura. Her entire compensation came from Champaign. Further, Boesch was appointed to her position by the Champaign board of directors and not the Futura board of directors. Moreover, the record shows that Boesch served in an operational capacity as a Business Banking Officer for Champaign and provides no evidence that she performed any services for Futura. On this record Boesch fails to generate a material dispute of fact regarding her alleged employment by Futura. Inasmuch as Boesch was not employed by Futura, she has no claim against Futura. Therefore, there is no need for us to consider whether Futura is covered by the NBA provisions preempting Ohio employment law. Accordingly, we find no error in the trial court's grant of summary judgment in favor of Futura.
 {¶ 29} As a final matter, we note that Boesch also argued the merits of her employment discrimination and retaliation claims in her appellant's brief. Because we hold that the NBA preempts R.C. 4112 with respect to her employment discrimination claim against Champaign, that there is a material dispute of fact in regard to her retaliatory discharge claim against Champaign, and that the lack of a material dispute in fact in regard to Boesch's employment status with Futura negates her claims against Futura; we do not consider such claims.
 {¶ 30} We therefore find that the trial court did not err in granting summary judgment to Champaign with respect to Boesch's employment discrimination claim and to Futura with respect to Boesch's employment discrimination and retaliatory discharge claims. However, we find that the trial court erred in granting summary judgment to Champaign as to Boesch's *Page 13 
retaliatory discharge claim. Accordingly, Boesch's sole assignment of error is sustained in part and overruled in part.
 III {¶ 31} Boesch's assignment of error is sustained in part and overruled in part. The judgment of the Summit County Court of Common Pleas is affirmed with respect to Boesch's employment discrimination claim against Champaign and with respect to her employment discrimination and retaliatory discharge claims against Futura. However, the judgment of the trial court is reversed as to Boesch's retaliatory discharge claim against Champaign and the cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 14 
Costs taxed to both parties equally.
CARR, P. J.
CONCURS
[1] Wells Fargo provides, "a bank `officer' within the meaning of section 24 possesses the following attributes: First, he or she holds an office created by the board of directors and listed in the bank's bylaws. Second, he or she is appointed by the board of directors, either directly or pursuant to a delegation of board authority set forth in the bylaws. Third, he or she has the express legal authority to bind the bank in its transactions with borrowers, depositors, customers, or other third parties by executing contracts or other legal instruments on the bank's behalf. Fourth, his or her decisionmaking authority, however it might be limited by bank rule or policy, relates to fundamental banking operations in such a manner as to affect potentially the public's trust in the banking institution. If a particular bank employee holds a position possessing these features, he or she may be viewed as the bank itself in the eyes of third parties. Such an employee is an `officer' and serves at the pleasure of the board of directors." (Internal citations and italics omitted.) Wells Fargo, 53 Cal.3d at 1091.